# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| KAISER GROUP INTERNATIONAL, INC., | : | Bankruptcy Case No. 00-2263-MFW |
| | : | |
| Debtor. | : | |
| | : | |
| KAISER GROUP INTERNATIONAL, INC., et al., | : | |
| | : | |
| Appellants, | : | |
| | : | |
| v. | : | Civil Action No. 04-278-JJF |
| | : | |
| JAMES D. PIPPIN, et al., | : | |
| | : | |
| Appellees. | : | |

Mark Minuti, Esquire and Michael F. Bonkowski, Esquire of SAUL EWING LLP, Wilmington, Delaware.
Of Counsel:  G. Christopher Meyer, Esquire and Christine Murphy Pierpont, Esquire of SQUIRE, SANDERS & DEMPSEY L.L.P., Cleveland, Ohio.
Attorneys for Appellants/Debtors, Kaiser Group International, Inc., et al.

Pamela S. Tikellis, Esquire and Brian D. Long, Esquire of CHMICLES & TIKELLIS LLP, Wilmington, Delaware.
Of Counsel:  J. Dennis Faucher, Esquire and Michael S. Tarringer, Esquire of MILLER FAUCHER AND CAFFERTY LLP, Philadelphia, Pennsylvania.
Attorneys for Appellees, James D. Pippin and the Class of ICT Spectrum Bankruptcy Claimants.

**MEMORANDUM OPINION**

June 24, 2005
Wilmington, Delaware

FARNAN, District Judge.

Presently before me is an appeal by Appellants, Kaiser Group International, Inc. and its affiliates ("Kaiser") from the February 2, 2004 Order (the "Order") of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") granting Appellees' motion for resolution of their class claim.[1] For the reasons set forth below, I will affirm the Order of the Bankruptcy Court.

I.  **THE PARTIES' CONTENTIONS**

By its appeal, Kaiser contends that the Bankruptcy Court erred in ordering it to issue 247,350 shares of additional New Common Stock to Appellees after the confirmation and substantial consummation of Kaiser's Second Amended Plan of Reorganization (the "Plan"). Kaiser contends that the Bankruptcy Court's Order is contrary to the terms of the Merger Agreement by which ICT Spectrum Constructors, Inc. ("Spectrum") merged into a subsidiary of Kaiser, and contrary to the terms of the Plan which treats Appellees as Class 5 Equity Interest Holders. Kaiser contends that the Bankruptcy Court erroneously permitted Appellees to use the market value of their stock as the basis for their valuation resulting in treating Appellees differently than their similarly situated Equity Interest Holders. Kaiser also contends that the

---

[1] Appellees are James D. Pippin and the Class of ICT Spectrum Bankruptcy Claimants.

1

Bankruptcy Court erred in using Section 510(b) of the Bankruptcy Code to honor Appellees' claim for damages of Kaiser's breach of the "fill-up provision" in the Merger Agreement[2] and erred in using Section 365(g) of the Bankruptcy Code as a means to calculate the amount of New Common Stock to be issued to Appellees.

In response, Appellees contend that Kaiser rejected the Merger Agreement as an executory contract in its Plan, and therefore, Kaiser's rejection of the Merger Agreement and breach of the fill-up provision is deemed a prepetition breach giving rise to a prepetition claim. Appellees acknowledge that their claim was subordinated under Section 510(b), but contend that this subordination does not mean that their claim should be disallowed. Rather, Appellees contend that the subordination under Section 510(b) means that they must receive compensation on the same basis as claimants in their class under the Plan. Based on the Plan in this case, Class 5 Equity Interest Holders are not entitled to cash but to New Common Stock in satisfaction of their claims. Appellees also contend that the Bankruptcy Court properly rejected Kaiser's argument that the number of shares to

---

[2] Under the terms of the "fill-up" provision, Kaiser agreed that if its shares of common stock were trading at less than $5.36 per share on March 1, 2001, Kaiser would provide former Spectrum shareholders cash, additional Kaiser shares, or a combination of cash and additional Kaiser stock such that the total value of shares and cash would equal $5.36 per each Kaiser share originally received at the time of the merger.

2

be issued to Appellees was limited by the Merger Agreement, because such a limitation would in effect preclude Appellees from recovering any damages for their claim under Section 510(b) for the total value of the contingent merger consideration. As for Kaiser's argument that the Bankruptcy Court's distribution is not permitted by the Plan, Appellees contend that the Bankruptcy Court took into consideration the boundaries of the Plan by limiting the number of shares to be received by Appellees to 247,350. Appellees maintain that this limitation leaves enough shares to satisfy the distribution that must be made to Class 4 Allowed Claims under Section 4.05 of the Plan.[3]

## II. STANDARD OF REVIEW

In undertaking a review of the Bankruptcy Court's decision, a clearly erroneous standard is applied to the Bankruptcy Court's findings of fact and a plenary standard is applied to its legal conclusions. See <u>Am. Flint Glass Workers Union v. Anchor Resolution Corp.</u>, 197 F.3d 76, 80 (3d Cir. 1999). With mixed

---

[3]    Section 4.05 of the Plan provides:

Treatment of Equity Interests. Class 5 Equity Interests are Impaired. In full settlement, release and discharge of all Class 5 Allowed Equity Interests, the Debtors shall on the Distribution Date, distribute to the holders of Class 5 Allowed Equity Interests their Pro Rata portion of an aggregate number of shares of New Common Stock, which amount represents seventeen and sixty-five one-hundredths percent (17.65%) of the total number of shares of New Common Stock issued from time to time to holders of Class 4 Allowed Claims.

3

questions of law and fact, the Bankruptcy Court's findings of historical or narrative facts must be accepted unless clearly erroneous, but a plenary review is undertaken of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts. Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 642 (3d Cir. 1991) (citing Universal Mineral, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101-02 (3d Cir. 1981)). Appellate responsibilities are further understood by the jurisdiction exercised by the Third Circuit, which focuses and reviews the Bankruptcy Court decision on a de novo basis in the first instance. In re Telegroup, 281 F.3d 133, 136 (3d Cir. 2002).

### III. DISCUSSION

Reviewing the decision of the Bankruptcy Court in light of the applicable legal principles and the provisions of the Plan and the Merger Agreement, I conclude that the Bankruptcy Court correctly decided that Appellees are entitled to the distribution of 247,350 shares of New Common Stock. As the Bankruptcy Court recognized, Appellees have two grounds for recovery, one based on their ownership of stock (if that stock is still owned) and one based on their claim for damages under Section 510(b) of the Bankruptcy Code.

Pursuant to Section 510(b), "a claim arising from rescission of a purchase or sale of a security of the debtor or of an

4

affiliate of the debtor, for damages arising from the purchase or sale of such a security . . . shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock." This provision does not operate to reduce or eliminate Appellees' claim, but only to ensure that Appellees' receive compensation for their claim on the same basis as the claimants who are on the level to which their claim is subordinated.[4] Here, under the terms of the Plan, Appellees' cannot receive cash, because other Class 5 Equity Interest Holders cannot receive cash. Rather, Appellees' can only receive shares of New Common Stock to satisfy their claim.

As for the valuation of Appellees' claim, the Bankruptcy Court correctly concluded that Appellees' claim for damages is considered a prepetition breach based on the Plan's rejection of the Merger Agreement as an executory contract. 11 U.S.C. § 365(g). Kaiser contends that the Bankruptcy Court improperly valued Appellees' claim using the market value of their shares.

---

[4] See e.g. In re VF Brands, 275 B.R. 725, 727 (Bankr. D. Del. 2002) (stating that "[S]ection 510(b) provides that if the claim is common stock, it will be given the same priority as common stock"); In re American Solar King Corp., 90 B.R. 808, 826 (Bankr. W.D. Tex. 1988) (holding that bankruptcy claimants subordinated under § 510(b) may be treated on parity with equity security holders and receive the equivalence of their claim in post-confirmation shares).

5

I disagree. As the Bankruptcy Court noted, Appellees have a Section 510(b) claim up to the amount of the fill-up provision that was breached by Kaiser. Kaiser attempts to limit these damages in accordance with the Merger Agreement's limitation on the issuance of stock, but the Bankruptcy Court correctly observed that "[t]he contract language, which limited the issuance of stock to 1.5 million additional shares, <u>did not limit the fill-up claim to those shares</u>, but, simply restricted the debtor's ability to satisfy that claim in stock, rather than cash." Hearing Tr., dated 1/20/04 at 35-36 (emphasis added). Stated another way, Appellees have a prepetition claim for breach of the Merger Agreement and the amount of damages to which they are entitled for that breach should not be reduced or eliminated because their claims have been subordinated under Section 510(b). Thus, I agree with the Bankruptcy Court that a contrary conclusion would essentially eliminate Appellees' ability to recover on their claim for the total value of the contingent merger consideration, a result that is not contemplated by Section 510(b).[5]

---

[5] The Bankruptcy Court recognized that Kaiser's position would eliminate Appellees' claim for damages under Section 510(b) in the following exchange between counsel and the Bankruptcy Court, during which the Bankruptcy Court rejected Kaiser's argument that the amount of shares recoverable by Appellees should be limited to the Merger Agreement:

MR. MEYER: . . . As I indicated under the agreement, the maximum number of shares they could have received was 3 million.

6

THE COURT: However, to the extent that that – the value was not there, the debtor then had to pay cash.

MR. MEYER: If the calculation had been run, the contract would have provided that, that's correct. Again–

THE COURT: And that's their–

MR. MEYER: -- just as a 10b-5 plan.

THE COURT: Right.

MR. MEYER: Okay. There is no difference between – if I bought Kaiser shares at $15, I had theat same claim the day before the filing that these folks had, but I had to prove causation and scienter to bring that claim.

THE COURT: But, I am not sure that the – where in the Bankruptcy Code does it say that those claims are not treated?

MR. MEYER: Didn't say that they –

THE COURT: <u>You're in essence saying rejection claims and rescission claims are eliminated by the Code</u> –

MR. MEYER: Well, Your Honor, a recision claim is the ability to return my share and get back a value for it. Under the plan, what you get for your shares is full treatment for that proportionate interest. So, you are given, in effect, the–

THE COURT: Well, that's the plan, and we'll get to the plan, but where in the Bankruptcy Code are you suggesting that having a rescission claim means you have nothing other than your stock --

MR. MEYER: I don't--I--

THE COURT: and it should not be treated --

MR. MEYER: -- I can't point Your Honor to a spot that addresses a rescission claim as such. But, to --

THE COURT: It says that your recision --

MR. MEYER: -- the extent that I have shares of stock and I'm treated in full for them, I'm counted as being treated in

7

Kaiser contends that the Bankruptcy Court's award will adversely impact third party investors, because their stock will be diluted by the distribution to Appellees. The Bankruptcy Court recognized the potential impact to third parties but concluded that such parties were on notice of the existence of Appellees' claim and despite any dilution, Appellees were entitled to recover for Kaiser's breach of the Merger Agreement. In this regard, the Bankruptcy Court stated:

> I think that the Pippin class is entitled to stock, premised on a claim equal to the amount of shares they had, <u>plus the amount of damages suffered by them, as a result of a rejection</u>, and thereby termination of the fill-up provisions in their agreement.
>
> * * *
>
> <u>And although it may dilute other creditors, or Shareholders, who purchased their stock since the confirmation, I think that, certainly, the Pippin claim, has been a matter of record, at the time of</u>

---

full, for my proportionate interest in the business.

    THE COURT:  <u>For your stock, but not for your rescission claim. Some people may not have a rescission claim.</u>

    MR. MEYER:  <u>They're one and the same.</u>

    THE COURT:  <u>They're not the same.</u>

    MR. MEYER:  If I --

    THE COURT:  <u>510(b) and the Security Laws suggest they're not the same.</u>

Hearing Tr., dated 1/20/04 at 18-20 (emphasis added).

8

> <u>confirmation.</u> And the Bankruptcy Code, surely was known. So, I think that although it may dilute others, I think it's the correct result.

Hearing Tr., dated 1/20/04 at 36-37 (emphasis added). I agree with the reasoning of the Bankruptcy Court. In its Year 2000 Annual Report, Kaiser publicly disclosed the uncertainties surrounding the issuance of New Common stock stating:

> There are substantial uncertainties as to the amounts of claims that will ultimately be Allowed Claims in the bankruptcy proceeding. There are similar uncertainties as to the amount of cash . . . that will be available to be distributed to the holders of Allowed Claims pursuant to the terms of the Plan. Both of these uncertainties are affected by matters outside the Company's control. <u>Because of these uncertainties, it is not possible to predict with accuracy the number of shares of New Preferred Stock and New Common Stock that will ultimately be issued by Kaiser Holdings in connection with Old Kaiser's bankruptcy proceedings</u>.

R. 1637 (emphasis added). Kaiser points out that they also disclosed that they "expect[ed] that only a small percentage of the shares of New Common Stock will be issued to former ICT Spectrum shareholders." However, the fact that Kaiser may not have realized the extent of the distribution to be made to Appellees does not undermine Appellees' entitlement to that distribution.

To the extent Kaiser relies on my decision in <u>In re Genesis Health Ventures, Inc.</u>, 280 B.R. 339, 345-346 (D. Del. 2002), I find the circumstances of that case to be distinguishable. In <u>Genesis Health</u>, I dismissed a creditor's appeal requesting the issuance of additional shares as equitably moot because, in

9

addition to other factors, the issuance of additional shares would have had an adverse effect on third party investors. However, the relief the creditor sought in Genesis was not consistent with the provisions of the debtors' reorganization plan and other investors did not have sufficient notice of the creditor's claim to additional shares. In this case, however, the relief sought by Appellees and granted by the Bankruptcy Court is consistent with the provisions of the Plan and third party investors were given notice regarding the uncertainties surrounding the distribution of New Common Stock.[6] Further, the relief requested by Appellees here does not have the effect of unraveling the Plan as would have been the case in Genesis.

In sum, I conclude that the Bankruptcy Court's decision properly accounted for the provisions of the Plan and is consistent with the legal principles governing Sections 365(g) and 510(b) of the Bankruptcy Code. Accordingly, I will affirm the February 2, 2004 Order of the Bankruptcy Court.

### CONCLUSION

For the reasons discussed, I will affirm the February 2, 2004 Order of the Bankruptcy Court.

An appropriate Order will be entered.

---

[6] Also, unlike Genesis, any deficiency in the notice given to other creditors was the result of Kaiser's estimation that the distribution to Appellees would be a small percentage of New Common Stock and not the result of anything done by Appellees.

10